May it please the court, my name is Andrew Lindeman. I represent the appellants in this matter. The appellants are the current director of the South Carolina Department of Social Services and the three former directors, all of whom are sued in their individual capacities. We're here today based upon a denial of qualified immunity in the court below. This case involves two causes of action. One, where the plaintiff below, who is an adopted child of Mr. and Mrs. Hensley, has asserted a claim pursuant to the Adoption Assistance and Child Welfare Act, specifically Section 673A3 of that particular act, as well as a contracts clause claim. This case involves specifically adoption subsidies and what is the requirements under federal law as far as consultation or concurrence from the adoptive parents when any type of changes, either reductions or increases are made in adoption subsidies that are provided for under the Adoption Assistance and Child Welfare Act. In 2002, the state of South Carolina, like most states, probably all states, were undergoing severe budgetary issues, and as a last resort, the director of DSS at that particular time made a decision to reduce the foster care maintenance board rate and as a result also made the same reduction in the adoption subsidy rate, and it was a $20 per month reduction. These cuts were not individualized. They were across the board, and that's actually very significant. In this particular case, the adoptive child is taking the position that they have a federal statutory right. How that statutory right has exactly been framed has differed from the court below to this court, and frankly I think the way it's been termed in the plaintiff's, excuse me, in the appellee's brief doesn't make too much sense, but I think what the statutory right they're claiming is, and you've got to recognize this claim was originally brought by the adoptive parents because of statute of limitations issues, I presume, which we immediately raised. The plaintiff actually changed from the initial complaint to the first amended complaint and subsequently the additional amended complaint since that the actual plaintiff is the adoptive child and not the parent. And so because the child is a minor, the bar doesn't close on the child's claim until she's, what, 24? Under South Carolina law, it would be until 19. 19. One year after majority. One year. One year statute of limitations. That's right, and quite frankly, we've got arguments as to that particular point, but based upon the fact that we're here on an interlocutory appeal based on denial of qualified immunity, that issue hasn't been briefed and isn't before this court. No, and I didn't mean to divert your attention to that. Oh, and that's fine. Do you have a class act and certification here? The class has been certified. Now, that issue, of course, is also not before this court because, again, we're here primarily or exclusively on an interlocutory appeal based upon qualified immunity. And you're seeking that insofar as the civil damage claim only? That's correct. Not insofar as the declaratory and injunctive claims. The declaratory and injunctive relief claims may or may not be resolved by this court's decision in this case, obviously. Yeah, we wouldn't have any jurisdiction over that. You wouldn't have jurisdiction over it. The only way this court's decision could have an effect is if you make a ruling based on the first prong of qualified immunity and ultimately agree with the appellant's position, DSS's position, that there is no either number one, our first argument, which is there's no private right of action pursuant to the Adoption, Assistance, and Child Welfare Act, or number two, the more likely scenario I would submit, which is that that particular provision of the Act, 673A3, doesn't require parental concurrence in situations such as what we have here. I'm sorry. There are three appellants. There are actually four appellants. Four appellants. The current DSS director and the three predecessors. Okay. All right. I'm sorry. All right. And only the current director has been sued in their official capacity, and that's for purposes of the prospective relief. Right, but the current director is also sued individually? Yes. Wait a minute. How can the current director, who had nothing to do with the reduction, leaving everything else to one side, how could you possibly recover damages from the current director? I think the plaintiff's theory on that is that each of the directors, since the initial one in 2002 made the decision, none of the subsequent directors, including the current one, has reversed that and reinstated the $20 per month payment. Of course, our position is, even if that's been properly pled, clearly that's not required. How could that possibly stay the claim? Right. Clearly that's not required under the Act. The Act sets a ceiling based upon the act. You imagine a scheme where a government official, given what government looks like today, that you ask somebody to become secretary of X, Y, Z, and they give up the home life that a public official gives up, the remunerative professional opportunities that such people sometimes give up. All you give up, you step into a job and you get sued for money damages for something that happened 10 years ago? No, I thought your representation was that they said they would do away with the law. So it was the going forward denial. No, there's no evidence in the record that I'm aware of, and of course this is a very limited record. No, I'm not talking about evidence and whether that is in fact the case. I thought that that was the basis for the complaint. In other words, when you came into office, you didn't do away with this. That's correct. So we're owed the money for after you came into office. You didn't reverse the prior decision and reinstate the $20 per month. But in any event, you agree the money damages is the only thing that's in front of us. Yes. And I'm just trying to clarify whether money damages are sought against the current. You said yes. Yes. That they are seeking money damages, not just prospective injunctive relief in her official capacity, but your understanding is they sued her for money damages for what her predecessors did. That's correct. But isn't there also did that for sure, but how long has that person been in office? She's been in office since the current administration, which went in in 2000 and, let me get this right, 2011, January 2011. So they say that she is due the money damages for the last two years because she didn't do away with this policy. Is that correct? That would be their theory as I understand it. Not for the previous years because the question that comes up is, the reason would be if it's clearly established, she should have done away with it. And that's the whole basis of you saying qualified immunity doesn't apply here because it wasn't clearly established. Well, that's a big part of it. We're moving on both prongs. And, frankly, on the first prong, as I indicated, and set aside the issue of whether or not there's a private enforceable right. I'm not abandoning that issue. I'm sorry, Judge Monk. Go ahead. I'm not abandoning that issue, but I think we have a very strong position on both prongs because, number one, based upon the fact that you can't have parental concurrence, a proper reading of 673A3 doesn't allow for parental concurrence for reductions or cuts if you've got across-the-board cuts. And you've got to remember the second or the last provision of that particular section requires as a federal mandate, and it's also adopted in South Carolina regulations as well, that the adoption subsidy can never, they use the words, in no case, can ever exceed what the foster care board rate is. You can't. But that's your harder argument. You don't have to win on that argument. All you have to win on is the argument that that right, whatever it is, is not clearly established. Isn't that right? Yes, that's true. Actually, I think the harder argument is that there's no enforceable right. But I just said. But then the other prongs, I don't think, are nearly as hard. And, obviously, probably the easiest way for this court to decide it would be going to the second prong, which, obviously, after Pearson v. Callahan, you can do. And, in fact, a case that I was involved in and Judge Davis was involved in and came down yesterday, Jerome Williams, the prison visitation case, that's exactly what this case did. You were not counseled together. No, no, no. It sounded like it was way too cozy. Judge Davis issued a concurring opinion. Anyway, but that was what this court did in that particular case that came down yesterday. And, obviously, you can do that in this particular case as well. That is a right to the qualified immunity question. And jumping to the second prong, whether or not it was clearly established, in 2002 there was absolutely no case law. There have been four cases since then that have dealt with, in one way or another, Section 673A.3. There's a Ninth Circuit case from 2005 which dealt with whether or not there was an enforceable right that could be pursued. That was the extent of Ninth Circuit's decision. They found that there was an enforceable right. It was done on a 12B6 motion, and they actually indicated in that decision, that's the ASW v. State of Oregon case, that they weren't going to address the merits. There's an unpublished decision from Missouri that the plaintiffs rely on that dealt with this section but struck down, or at least granted a preliminary injunction, dealing with a durational requirement that was put in by the State of Missouri. It really doesn't have anything to do with what we have in this case. There's no durational requirement. None of those cases were in existence in 2002, at the very least. None of them were. But could have implications if there had been a clearly established right, would it? If it became clearly established somewhere since 2002, would there be potential liability for that point forward? Well, I would submit not because, frankly, this Court has held routinely, and held in Jerome Williams' case that came down yesterday as well, that you focus on controlling authority either from the United States Supreme Court or within this circuit. At the time this decision is made, but I think Judge Wynn's question is, since the complaint, I think, alleges ongoing violation of the rights, so if there was clearly established law after the original decision was made, would that make any difference? It would if it was from the United States Supreme Court or within this circuit. And I would submit, and there's none of that. There's absolutely no authority whatsoever. And a little bit of authority from other jurisdictions, as I indicated. The Ninth Circuit case didn't decide the merits. The Missouri case is unpublished and dealt with a state regulation that's totally different than what we have here. You have an Indiana case, which actually supports our position. In fact, the Indiana District Court case, and this is C.H. v. Payne from 2010, it's cited in our brief, they actually make the point that we're arguing. If I could read, it says, in our view, the only time an across-the-board cut of adoption assistance payments might be allowable under the statute would be in circumstances where a state's adoption assistance payments exceed its foster care maintenance payments. And that's exactly what happened in this case. The state lowered the foster board maintenance payments and had to lower, because at that particular time, the adoptive child, BLH, was entitled, was getting the same amount of money in adoption subsidies that she would have been entitled to in foster care. Go back to my question initially on the declaratory injunctive relief. I'm trying to understand that. You mentioned, you sort of indicated, well, if we answered it in a certain way. And it seems clear in the Pearson that the way we can avoid this question, whether there's a right to simply go and say, if we went with your direction on a clearly established, then that's going to leave those claims out there. That's a pretty significant exposure, too, isn't it, declarative and injunctive relief? That's going to leave the claim for the lower court to decide, yes, the prospective relief. And we would be making the same argument. We made those same arguments at summary judgment, and it was denied. But we would be making the same legal arguments. And it sort of seems like judicial economy, we would decide them. But we have to talk about our jurisdiction, and we don't have jurisdiction over them, right? No, you do have jurisdiction because it's the first prong of the – you don't have jurisdiction to actually strike down and say there's no injunctive relief. But you have jurisdiction to decide the first prong of the qualified immunity. In other words, we could end the case if we decide prong one, but we can't end the case if we decide – in your favor – but we can't end the case if we decide prong two in your favor. That's correct. That's what you said. Unless we should do some, you know, appellate jurisdiction. But you clearly have jurisdiction to decide prong one, and prong one will decide the case because if you agree with our position that there is no federal right, either there's no federal right or that the actions that were taken by the Department of Social Services didn't violate 673A3 or, for that matter, the Contracts Clause. And I think the Contracts Clause issue is very straightforward. And I see my time is coming to an end, and I'll deal with the Contracts Clause question briefly on rebuttal because I know there was an attempt to withdraw that claim, and I know the court hasn't ruled yet on whether they're going to allow the plaintiffs to withdraw that claim in light of them filing a state court action. Have you filed anything in the state court action yet? We have not filed an answer. It has been served, and the time to answer has not run yet. Does your mention of answer mean you're not going to file a motion to dismiss? I do not know how we're going to handle that. Okay, fair enough. I'm not trying to trick you or anything. I think under our state procedure we're going to need to move for summary judgment because it will be based on, like, statute of limitations and some affirmative defenses like waiver and estoppel and those sorts of things. Thank you. Thank you. Mr. Langley? Thank you, Your Honor. May it please the court. I'm Ryan Langley on behalf of the plaintiff, BLH, and others similarly situated. The issue that I want to sort of hit first is that the fact issue that's come about in this case is because of the moving sort of explanation that we've gotten for the justification for this cut. At the outset in 2002 it was a budget-based decision. All of the language and the correspondence with the families, it's all about the budget. Since that time, in the briefing from the appellants before this court and at the summary judgment stage at the lower court, it was all about the interplay between two sections of 673A3, the concurrence of the parent section and the not-to-exceed section, which they've cited that the adoption subsidy payments cannot exceed the foster care payments. Well, that's really separate from what we're claiming is the federal right. Well, they're not necessarily contradictory. Well, here's why they are. Because the federal right that we're claiming, Judge, is that a budget-based decision cannot be made in derogation of contract-based rights. And that goes back to the U.S. Trust case and to the Energy Reserves case, the Allied Steel case, a number of cases that were well-established long prior to 2002. That's what my learned colleague here suggested was confusing in our brief. And I want to make that clear. That's the right that we're seeking enforcement of. Here's one of my problems. You're suing the appellants in their individual capacity under Section 1983 for contract damages owed, if by anybody or anything, the State of South Carolina. So I'm a little discombobulated by that idea. I don't understand it to be a valid contract claim to sue A because A is merely an agent of the promisor B. All right. So maybe you could start there. Explain that to me. Your Honor, I think it's deeper than that. It's not just a contract clause claim. It's not just a contract claim. The reason that it's 1983. Well, it's all it is. Well, no, sir, Your Honor. Well, it's a contract claim brought pursuant to Section 1983. I get that because. . . Well, it's a federal right claim pursuant to 1983, and the federal right is under Section 1983. I think that's correct, but you started out saying it was a contract claim. Exactly. So, you know, pays your money and you take your choice here. Yes, ma'am, Your Honor. I didn't mean to suggest that it was a contract claim. Okay. It is a claim under 1983 for violation of this federal right that parties who have obligations that are reduced to contract with the state or just statutory obligations from the state that cannot be abrogated on the back of the budget. I'm sorry to interrupt, but I'm really curious. Are there any. . . What's your best case? The U.S. Trust case. No. Let me finish. What is your best case for a damages action against a state official in his or her implementation of a federal program under the spending clause? The best case under specific spending clause legislation? Yes. In other words, what we have here is we have a situation where Congress has said, here are some things we want the states to do. We're going to, you know, the classic spending clause situation. We're going to give you the money, some of the money, maybe most of the money to do this. You've got to put in a little bit yourself, state, because we think this is a worthwhile goal. So state officials start implementing the program. Is there any case anywhere ever in which any court has recognized a 1983 action or just a state law action against a state official under those circumstances? I don't think there would be a state law action against a state official because they'd be acting in their agent capacity. Why there's a 1983 action goes back to is there an established right to be free from a budget-oriented cut? And that's what we're saying. And so you don't have any such cases asserting this right to be free from a budget-oriented cut? Sure, the U.S. Trust case. The U.S. Trust case. Yes, and that's a 1977, or excuse me, a... That wasn't a... It was a 1977 case that involved a bond, okay? And there were individuals in New Jersey, the state took out a bond to do some public works projects. One of the covenants that went along with the bond was that the state was obligated to use the money funding the bond only for these particular set of public works projects. The state issued a statute in 1974 that said they didn't have to use the money for those public works projects. And the court found that it was a contract clause case. See, that's what I'm... So it wasn't a 1983 case? No, the court said that that was a substantial impairment to that contract. I was talking about 1983. What contract do you have here? The contract... Yeah, I thought we were going in a circle. You say contract, and Judge Davis shows you the problems with the contract claim, and you say, no, it's a statutory claim. So... Well, it's both. I mean, that's the difficulty. There is a statutory claim under Section 673, and there's a contract that implements that statutory obligation. So it's difficult to parse it out. I mean, you can see the issue that we've had with pleading it, attempting to plead it both ways. What we're trying to do is recover for these children that have had the money that they agreed to and the families that have come from adoptive care or into adoptive care from foster care that they can't go back now. Is the reason you have 1983 here, and I don't mean this pejoratively, is because that's the only way you're going to get your attorney's fees? Well, no, sir, Your Honor. We've got an agreement with our clients that we'll get our attorney's fees for the recovery that we obtained for. Is it a part of... Somebody's paying attorney's fees to recover $20 a month per child. For 10 years? It's a big deal to these families, Your Honor. It's a big deal to these families. So the kids won't get all the $20. I'm probably going someplace I shouldn't go. Well, I think it's fair, Your Honor. Unless there's a 1983 recovery, unless you recognize that a state can't come in and say, oh, willy-nilly, we've got a budget issue, and therefore your contract is meaningless, then you're right. These children that have lost the money won't get all of the money they should get back. But there's no other way for us to organize it unless there's a 1983 claim accepted. So some members of your class, obviously, are what? 23, 25, 27 years old today? They are. And some of them, they were... And so, go ahead. I mean, the whole thing is just... So you've got a 27-year-old adoptee who's going to get some of this money paid either by, if you win, paid by these individuals out of their personal funds, or if the state steps in, and I guess from your perspective, does the right thing, air quotes, and indemnifies these former and current agency heads, then... Okay. That vindicates Congress' intention to have this money in the hands of the parents of these adopted children? Well, it wouldn't be 27, Your Honor. Okay, 23. Well, it wouldn't be 23. It could only be two-year... They were 19 at the time that we brought the action. I mean, the oldest child, so it would be 20, 21. I think the action was filed about two years ago. Yeah, but isn't the class... Doesn't the class include... Does the class include children adopted in the last 8 to 10 years? Only... No. No? It only goes back to 2002, Your Honor, because it's only the children that were in... That were formally getting the higher amount. That's right. After 2002, then the children that moved from foster care to adoption had a separate contract, had a separate agreement, and their agreement was set at that time based on the rates that were at that time. So they don't have a... They're not included in the class because they were not affected by this cut. They didn't have a preexisting... How large is the class? How big is the class? Well, Your Honor, we've been... Best of your knowledge. 4,100 children. 4,100 children? That's right. There were 4,100 children under the care and custody of the Department of Social Services in 2002. I shouldn't say it that way. That had passed through the care and custody of the Department of Social Services. Passed through. So these were 4,100 adoptees. Yes, sir, Your Honor. And so some of them may have been 17, so they get a year of benefit. Some of them may have been 3, so they're continuing to go on. I see your point. So there'll be one calculation that's performed, but it'll be a different number for each. And so to your point, that money goes back to the parents that lost out. I mean, remember, the state benefits. Well, the state's only duty here is to confer with the parents, right? The concurrence of the parents. Concurrence of the parents. And it's interesting, you know, the case cited by Mr... I'm sorry, Your Honor? Sorry, go ahead. The case cited by Mr. Lindeman, the CH Payne case from Indiana, that court did find that Section 673 unambiguously requires that the state engage in an individualized process with each family. That's what concurrence meant. They suggested in their brief that concurrence was vague and amorphous and ambiguous. Well, the case they cite for that says unambiguously. That's the Ninth Circuit case? No, that's the Southern District of Indiana case. Oh. But they do cite the Ninth Circuit case. Following the Ninth Circuit. The ASW. Yes, sir, Your Honor. Yes, sir, Your Honor. So the fundamental point is that the established right under 1983 is that you cannot use the budget as a justification to cut an obligation that you've already entered into  And the interesting thing is even... Well, of course, they point to this provision in 673A3. Yes, sir, Your Honor. And if you accept that provision, we don't, but if you do, in 2004, that goes away. Their justification in 2004 went away because they reinstated the foster care cut. The whole basis for the cut to adoption in 2002 was what they created. They decreased the foster care subsidy, which then they said, okay, well, because of what we've done, we've now got to do this and decrease the adoption subsidy. Well, they increased the foster care subsidy in 2004, but they didn't increase the adoption subsidy. The reason why? Foster care parents can bring the children back, so they've got to continue to incentivize those folks to hold on to them. And that's why they did it. But now the adoptive families, they've made a moral and contractual commitment to take care of these children. And so they cannot bring them back. And so the state's in a position where they've got the leverage over those folks to treat them really however you want. And that's really the danger if you accept their position, is that if you say you can... A state, state actor here, can cut the adoption subsidy, excuse me, cut the foster care subsidy, and thereby obligate itself to cut the adoption subsidy, what's to keep them from cutting the foster care subsidy to $1? Why is the federal government... This is a stupid question, I'm afraid, but why is the federal government permitting South Carolina to get away with this? Well, that's why we're here. No, that's not why you're here. My question is why, not... Also, you'd be suing the federal government then. Yeah. Well, you know, I hope that you'll act on behalf of the federal government and not allow South Carolina... We're not that far... We don't want any parts of that. No, I mean it very seriously, even though it was a dumb question. I presume, and maybe I shouldn't, that from a political perspective, and I don't have any hesitation in calling it that, when this happened back in 2002 and 2003, that there were efforts on behalf of your clients to persuade Health and Human Services to contact South Carolina and bring to bear whatever was available to get South Carolina not to do this. Now, there is... The appellants rely on these... What do they call it? These picks, policy questions and guidances that seem to say that the answer to my question is that the federal government believes South Carolina can do this. Well, Your Honor, the one, however you pronounce it, pick or whatever, that they rely on... Well, they rely on a couple. The principal one that they relied on that Mr. Lindeman referenced today for the automatic across-the-board decrease without obtaining the parents' concurrence. Right next to decrease says or increase. So the obligation, from our perspective, is if there's a decrease that you don't... You're not obligated to get the parents' consent for and there's an increase in the foster care rate that initiated that decrease, if you reverse that, then you go right back to that same provision. You can't read the decrease language without the increase language is what I'm saying. Okay. I mean, that's a fair answer to my question, but, you know, I understand there's a different administration there now, and look, we're all adults. I understand that different administrations have different policy preferences and administer federal programs differently, but, I mean, here we are 10 years later, 11 years later, and nobody on the federal side that has the clear authority to provide your clients with a remedy has stepped up. And, of course, you're in the right place, given those circumstances. I understand that. Courts are the last resort. But this strikes me as a really tough poll for you. Well, thank you. And you remember, you're talking about children that have come into the foster care and into the adoptive system because they've been abused and neglected. I mean, these are special needs kids. These are not kids with abundant resources that have ever even met a lawyer many times, much less have access to somebody to write a letter to the Department of Health and Human Services in D.C. and initiate a complaint internally through a federal agency over the persistence of time. So I guess this goes to Judge Davis's question about why hasn't this been done, why hasn't there been political pressure put on the administration? But surely they know about this lawsuit now. So, I mean, people in South Carolina, I assume, know about the lawsuit, right? Well, I don't know. So there was a groundswell. Well, we've got one client, Your Honor. I mean, that's who we represent as the class representative. And so we don't have a groundswell of votes coming in. No, no, no. A groundswell in the popular press or a groundswell among the legislators in South Carolina. It hadn't happened yet. I mean, that's what we're hoping for. And frankly, if they've conceded that they've got exposure at the state level, I mean, we could talk about the Contracts Clause claim for a minute and why we're doing what we're doing there, why we attempted to do what we did there with the withdrawal, is essentially that we felt like their reply was a concession that that was the place to be. Of course, when we first filed the case, they removed it to federal court. So, you know, we're trying to get a remedy for these children. And whatever that is. I'm not certain that our... Okay, you don't want to pursue your contract claim anymore. And we dismiss it. I don't know that that is anything one way or the other to the state court. I mean, you want to show it to the state court as the federal court has jurisdiction. No, ma'am. Has no jurisdiction. No, ma'am. Has no jurisdiction, right? Because they're dismissing it. They want to show it to the federal court as we've rejected it somehow or you've conceded on it. But I don't know that it has either one of those effects. Well, I don't mean to speak in terms of effect. What I'm trying to help you understand is from our perspective that we're trying to get a remedy for these children. Whatever the law is. I do understand that, but I really can't understand the argument that we've had about what our dismissal of the contract clause claim is no longer pursued. Has any effect at all on the state court action? I don't think it does, Your Honor. I just wanted to answer the court's question about why we did what we did because there was a response to that notice that suggested it was a crime. I know you're going to say that, but in other words, you say that they've conceded that you're properly in state court and not in federal court. But I don't know that our plain dismissal of it does that at all. I mean, you may make that argument, but... I don't think it has anything to do with the court's dismissal. It's their language from their brief that says this is where it ought to be. But you want us to dismiss that claim without prejudice? Yes, sir, Your Honor. And is there tolling in South Carolina that will permit you to avoid any limitations? Yes, Your Honor. That's the argument we'd make. I'm sure that they would make an argument to the contrary. Of course, they want it with prejudice. Right. But you want it without prejudice? Yes, Your Honor. Okay. Is discovery complete in this case, by the way? No. Your Honor, no discovery has been undertaken. That's why we initially asked for the court to remand it, not to dismiss the appeal, so we'd have the opportunity to flesh out some of these issues and find out just why they made the decision that they did. Yeah, but you understand the whole qualified immunity doctrine. They're entitled to an interlocutory appeal before any discovery. Yes, ma'am, Your Honor. And if they win as a matter of law, you're out of court. Right. If there's a decision as a matter of law, if the lower court's decision was based on solely a legal issue, you know, from the Witt case, but if you've got factual issues that underlie the determination at the district court, and that's what I was getting at with the basis for the decision. Was it a budget-based decision, like they've now seemed to argue on one side of their mouth, but then on the other, no, it was based on 673. So you think it's a motivational determination. I'm having difficulty understanding that. I do. I think it's what we've characterized as an ex post facto attempt to justify what they recognize now as improper, that they couldn't make this decision and couldn't make this cut on the basis of a budget. Well, improper... What you're talking about when you use the term improper is a breach of contract. No, sir, Your Honor, I'm talking about a breach of a federal right, not to have a federal provision, a federal obligation abrogated for a budget reason. I mean, that's what the U.S. Trust case said. I understand the court's point that it's not a 1983 action and that it's not a direct link and it's not a cookie-cutter fine example here, but they shouldn't be able to just get away with it just because they now have changed their tune.  They shouldn't be able to get away with it. No, Your Honor, I think it is clearly stated. I understand that, but if we should conclude that there was no clearly established law, the best you can do is the case you cited to us. I mean, you don't have another case, do you, in the Fourth Circuit or the Supreme Court that would say that this was a violation of the statute that was clearly established? Yes, Your Honor. Oh, you do? Okay, what is that? The Allied Steel case and the Energy Reserves case both support the position that we've taken. They're dealing with this statute? Not with this statute. Those are contract clause cases. Yes, Your Honor. But we've held that you don't have a 1983 action under the contract clause. Yes, Your Honor. So how do you marry those two? Well, that's what we're trying to do with the statutory right under 673, that it's a 673 right. That's where you then need the clearly established law. That's what I asked you about. Yes, ma'am, Your Honor, and I acknowledge there's not... We've done the best we can. Okay, fair enough. We appreciate that all the time. Yep, fair enough. Thank you very much. Thank you. Mr. Lindman, you have a few minutes. Thank you, Your Honor. Just a couple of points, and I know the court is, I believe, recognizing these points already, but I just want to make certain. Mr. Langley's now come before you and said the statutory right that he's claiming was violated was, if I wrote it down right, the right to be free from a budget-oriented cut. And the only thing he relies on, as Judge Davis just picked up on, are contract clause cases. In fact, the other two he cited to the court are contract clause cases. He has absolutely no authority within this circuit or outside this circuit that would find that such a right exists under Section 1983 and certainly doesn't exist within the specificity of the context of this case, which is what's required under Anderson v. Creighton and Edwards v. City of Goldsboro when you evaluate the federal right within its specific context. So I would submit to this court that clearly you could rule, if you want to go right to the second prong, which you can do under Pearson, you could overturn and grant qualified immunity to these individual defendants based on the second prong on that alone. I would also make the point, and this goes to another point that Judge Davis made, wondering where's the federal government? And then, Judge Davis, you answered your question. The federal government is absolutely fine if you look at the way the HHS and specifically the Administration of Children and Families, which not only interprets this particular statutory scheme but also enforces it, if you look at exactly how it was that they answered these questions. It's from the Child Welfare Policy Manual, if I can read one sentence. It goes right to this very point of what happened here. They said, once a child is adopted and determined to be eligible for Title IV-E adoption assistance, the adoption assistance payments may not be automatically adjusted without the agreement of the adoptive parents for any reason, here's the key language, other than an across-the-board reduction or increase in foster care maintenance rates. So they just answered the question right there. South Carolina reduced the foster care maintenance rates. There's nothing in the statutory scheme that prevents that. It doesn't matter what the rationale was, but clearly the letter from Director Patterson at the time was talking about budget cuts in 2002. She reduced the foster care maintenance rates, and as a matter of federal law, 673A3, the very last sentence of that statute, that provision, provides that in no case may the adoption subsidy be more than the foster care rate. So as a result, you have to drop that rate. And when it's across-the-board, that doesn't require parental concurrence, because that doesn't make sense. The way 673A3 should be interpreted, I submit, and this would go to the first-prong argument, is that the parental concurrence is required when you're looking at individualized circumstances, not across-the-board reductions or across-the-board increases. In fact, Director Patterson's letter talks about how 3 years before, when she became director, she fought for and got increases in both the foster board rate as well as the adoption subsidy rate. Of course, that was before the financial issues, economic issues in the early 2000s. They didn't get parental concurrence to increase those rates by $120, because they were all across-the-board. And so that goes to the first problem. It also goes to the second problem, because the argument that the ACF sees it our way, certainly that's additional evidence to show that what they're arguing wasn't clearly established. The actual government agency that is supposed to interpret and enforce this statute by clear questions and answers in their policy manual support what South Carolina did. I would also like to touch on one thing. There was a question about, is discovery complete? My reading of the scheduling order, and there's only one scheduling order in the case, had discovery over in April 2012, which was before both sides filed motions for summary judgment. There was an agreement from day one, and in fact, in a footnote in my reply brief, I put several sites where the plaintiffs themselves concede that there are no facts in dispute. These are purely legal issues. That's why they're perfect for qualified immunity and perfect for an interlocutory appeal to this court to be decided in that manner. One last point. There was a reference to the Indiana case, the C.H. v. Payne. Interestingly, Mr. Langley said that the Indiana District Court in that particular case found that 673A3 was non-ambiguous. Well, what's funny is they didn't know how to interpret concurrence, and I would submit the term concurrence really is fairly ambiguous, and that's why it requires some judicial interpretation. Because in that particular case, the reason why they granted a temporary injunction, and that was all, they didn't get to the merits, but they did find a likelihood of success on the merits. But what they had a problem with there was that Indiana, unlike South Carolina, reduced both rates, the board rate as well as the adoption subsidy rate, but the adoption subsidy rate was still much less than the board's rate. And so, therefore, the reduction in the subsidy rate, if it had not been touched, it would have still been below the new board rate, if that makes sense, how I said it. So that was the problem that the Indiana court had. But still, they talked about 673A requiring at least that the state first consult with the adoptive parents and consider the individualized needs of the children being adopted. They used the word consult. I mean, quite clearly, the word concurrence is subject to interpretation. Well, I don't know that you would have an quarrel with us if we held that, too. I know your position is that they shouldn't, but if we should hold that there is a right under this statute to be consulted, then you would go to saying 673A3 is an exception to that. Yeah, I don't disagree that. In an individualized circumstance, without question, I think that statute should be interpreted as requiring consultation, because you're taking in the individual circumstances of that child, you're taking into the individual circumstances of the adoptive parent's home and their financial situation. Do you agree that there is a cause of action? There is a cause of action under this statute, private cause of action. I'm not conceding that. We've got that in our brief, but I will recognize that that is a tougher issue for me to pursue. The two courts that have addressed it so far, the Ninth Circuit as well as the Missouri court, as well as the Indiana court, I shouldn't leave them out, have found that there is a private right of action. Based on the Souter M case, we disagree. My question, just a minute ago you said, yes, in the individual determination, you agree that they should talk to the parents. It sounds like a right to consultation. You just don't think they can enforce it? Yeah, I'm not suggesting that that gives rise to a federal right. Okay. The statute is written as may, and obviously, no, I apologize, Your Honor. I wasn't conceding that point and suggesting that there's no federally created right there. It says reasonable efforts will be made. Okay. You don't have any strenuous objection to a dismissal of the contract clause claim without prejudice, do you? Well, here's my concern. This is what I put in my return to this court. I'm not trying to be difficult. The reason why I asked for it to be with prejudice is because, number one, I think the city of Gastonia case, Crosby v. City of Gastonia, which I know, Judge Davis, you were on that case, clearly holds that if you have a state law breach of contract claim that you can bring, not necessarily that you can win, but that you're not foreclosed from pursuing your state law breach of contract rights, you don't have a contract clause claim. So we believe that we should win as a matter of law on that issue. But what I have a problem with it being without prejudice is they have just filed in state court. As the court well knows, state court has concurrent jurisdiction over 1983 claims. What I want to avoid happening is them amending down the road to bring their contracts clause claim in the state court action. We have to then remove the case and start over in federal court. Well, you don't ever have to remove a case from state court. Well, we would. I would, believe me, and this is no disparagement to our South Carolina judiciary, but I would much rather have a federal contracts clause claim decided in federal court. What if they made a representation in front of us right now that they wouldn't bring a 1983 contracts, a 1983 claim in state court? Yeah, if I can receive a stipulation to that effect, I have no problem with them withdrawing the claim. I didn't understand it clearly. Can you make a representation that you're not going to bring a 1983 action in state court? Yes, ma'am. Okay. Stipulating that there's not a bar to the strict contracts claim in state court? No. Yes, ma'am. Well, we're not deciding whether there's a bar or not. We're just dismissing without prejudice. Well, on the ground, the rest of your time or a lot of it stops without mercy with some dismissal of prejudice. If it's without prejudice, there would be no such argument. Right. And that wasn't my intent to try to make that argument. I can represent the court. Okay. Thank you very much. Thank you. We will come down and greet the lawyers, and then we'll first ask our clerk to adjourn court, and then we'll go down and greet the lawyers. This honorable court stands adjourned until 3 o'clock today. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Andre M. Davis, James A. Wynn, Jr.